UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| JON SAWYER and PENNEY SAWYER, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | 3:18-CV-00349-DCLC-HBG |
| | ) | |
| vs. | ) | |
| | ) | |
| DDRTC TURKEY CREEK, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' separate Motions for Summary Judgment [Doc. 32; Doc. 34; Doc. 37; Doc. 41]. Plaintiffs filed a response in opposition [Doc. 51] and a supplemental response with leave of Court [Doc. 61] to which Defendants each replied [Doc. 52; Doc. 62; Doc. 63; Doc. 65; Doc. 66]. These matters are now ripe for resolution. For the reasons that follow, the Motions for Summary Judgment of MRG Pizza-Tennessee, LLC d/b/a Blaze Pizza ("Blaze") [Doc. 32], Smoky Mountain Creamery, Inc. d/b/a Marble Slab Turkey Creek ("Marble Slab") [Doc. 34], and Jazzy Nail Bar, LLC ("Jazzy") [Doc. 41] are **GRANTED** and Defendant DDRTC Turkey Creek, LLC's ("DDRTC") Motion for Summary Judgment [Doc. 37] is **DENIED**.

**I. BACKGROUND**

DDRTC owns a shopping center located in the Turkey Creek area of Knoxville, Tennessee ("the Shopping Center") [Doc. 1, ¶ 7]. Blaze, Marble Slab, and Jazzy[1] each lease separate units from DDRTC in the Shopping Center [*Id*.]. Plaintiff Jon Sawyer ("Mr. Sawyer") is the Lead Field Service Technician for Melink Corporation and is tasked with adjusting controls on new HVAC

---

[1] Defendants Blaze, Marble Slab, and Jazzy are collectively referred to herein as "Tenants."

1

units [*Id*. at ¶ 8]. On July 6, 2018, DDRTC called Mr. Sawyer to adjust the controls on a new HVAC unit installed on the roof of Bath & Body Works, which is also located in the Shopping Center [*Id*. at ¶ 9].

To reach the HVAC unit, Mr. Sawyer had to climb a vertical ladder located in a service area at the rear of the building, which Tenants each have access to via rear exits from their units [*Id*. at ¶ 10]. Upon reaching the roof of the building, Mr. Sawyer had to walk through standing water to reach the HVAC unit [*Id*. at ¶ 11]. When Mr. Sawyer began to descend the ladder, he slipped and fell and seriously injured his left leg and ankle [*Id*. at ¶ 12]. Specifically, Mr. Sawyer broke his tibia and fibula to such an extent that the broken bones penetrated the skin and became exposed [*Id*. at ¶ 13].

Based on these facts, Mr. Sawyer and his wife, Penney Sawyer ("Mrs. Sawyer") filed a Complaint with this Court on August 23, 2018 [Doc. 1] asserting a claims of negligence against Tenants for failing to keep the service area clean and free of grease build-up and against DDRTC for failing to keep the service area and ladder clean and safe for use and failing to properly drain the roof [*Id*. at ¶¶ 17, 18]. Mr. Sawyer seeks damages for his injuries and Mrs. Sawyer seeks damages for loss of consortium [*Id*. at ¶ 19]. Defendants now each seek summary judgment on Plaintiffs' claims [Doc. 32; Doc. 34; Doc. 37; Doc. 41].

## II. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P.56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*

2

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### III. ANALYSIS

Under Tennessee law,[2] a prima facie claim of negligence requires the plaintiff to show the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Additionally, a plaintiff in a premises liability action must show the existence of a dangerous condition that "was caused or created by the owner, operator, or his agent," or of which "the owner or operator had actual or constructive notice." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). Tenants argue that they did not owe a duty with respect to the service area because DDRTC retained control over the common areas [Doc. 33, pg. 9; Doc. 35, pg. 9; Doc. 42, pg. 7]. DDRTC argues that it owed no duty to Plaintiffs and, if it did, Plaintiffs cannot establish a breach of any duty owed [Doc. 37, pg. 2]. Additionally, DDRTC asserts that it is entitled to summary judgment because Mr.

---

[2] This case is before the Court based on diversity of citizenship; therefore, the Court must apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Therefore, Tennessee law applies to the substantive issues in this matter.

3

Sawyer is at least fifty percent at fault for his injuries [*Id*.]. The Court will, in turn, address Tenants' and DDRTC's arguments in favor of summary judgment.

### A. Plaintiffs' Claims of Negligence against Tenants

This case, as it relates to Tenants, turns on the initial element in a negligence action—duty. The pivotal issue is whether Tenants owed a duty of care with respect to the common area where Mr. Sawyer fell. The determination of whether a defendant owed a duty of care is a question of law. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005). It is well-settled that owners and occupiers of businesses have a duty "to exercise ordinary care and diligence in maintaining their premises in a safe condition for invitees." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980) (citing *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. Ct. App. 1973)). However, "Tennessee common law has long held the landlord responsible for the condition of common areas under his control." *Tedder v. Raskin*, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987). "[W]here the landlord retains possession of a part of the premises for use in common by different tenants, the landlord is under a continuing duty imposed by law to exercise reasonable care to keep the common areas in good repair and safe condition." *Id*. at 347-48 (citing *Woods v. Forest Hill Cemetery*, 192 S.W.2d 987 (Tenn. 1946); *Buggs v. Memphis Housing Authority*, 450 S.W.2d 596 (Tenn. Ct. App. 1969)).

Therefore, Courts look to the aspect of control to determine whether a tenant owed a duty to invitees in a common area. *See Berry v. Houchens Market of Tennessee, Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2007) (holding that the lessee did not owe a duty with respect to the parking lot "when the lessee did not exercise control over the parking lot and the lease with the shopping center lessor provided that the parking lot remained in the control of the lessor."); *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3CV, 2006 WL 468724, at *6 (Tenn. Ct. App. Feb.

4

27, 2006) (holding that tenant did not have a duty to maintain the parking lot of a shopping center under the plain terms of the lease, which placed such duty on the landlord and merely gave the tenant the right to maintain the parking lot if the landlord failed to do so, after providing notice to the landlord.); *Gladman v. Revco Disc. Drug Centers, Inc.*, 669 S.W.2d 677, 679 (Tenn. Ct. App. 1984) ("where there is a parking lot in a shopping center reserved for the use of all tenants, a particular lessee would not be liable for injuries on the lot unless the lessee had exercised control over the parking lot.") (citing *Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 600 P.2d 1198 (N.M. Ct. App. 1979)).

In *Denton v. Hahn*, the court compared a condominium owners association's duty to maintain common areas to the duty of a landlord. No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *7 (Tenn. Ct. App. Sept. 16, 2004). The court held that because the alleged dangerous condition was located within the "common elements" of the condominium rather than within the condo unit, the association "had the obligation to see that it was maintained in good repair and in a safe condition" despite the fact that the unit owners had to collectively pay for such maintenance and repairs. *Id.* at *9. Here, there is no dispute that the service area is a "common area" of the Shopping Center, of which the lease granted the Tenants "the non-exclusive right to use" [Doc. 32-1, pg. 13; Doc. 36-1, pg. 9; Doc. 44-1, pg. 8]. The lease further provides that "Landlord reserves the following rights with respect to the Common Areas:…[t]o operate, manage, equip, light, repair and maintain said Common Areas for their intended purpose in such manner as Landlord shall in its sole discretion from time to time determine…" [Doc. 32-1, pg. 14; Doc. 36-1, pg. 9; Doc. 44-1, pg. 8]. Additionally, Tenants each paid annual "Common Area Charges" comprised of "a proportionate share of all costs and expenses of every kind and nature paid or incurred by Landlord in operating, maintaining, repairing and managing the Common Areas, including but not limited

5

to, cleaning, lighting, repairing, painting, maintaining, and replacing all Common Area improvements including the roofs of all buildings within the Shopping Center;…" [*Id*.].

Tenants assert that, based on the common law principles of negligence and the express terms of the lease, DDRTC retained control over the service area, the ladder, and the roof [Doc. 33, pg. 10; Doc. 35, pg. 9; Doc. 42, pg. 7]. Additionally, Tenants contend that DDRTC exercised such control of the service area by demanding removal of the items from the common area on various occasions [Doc. 63, pg. 3; Doc. 66, pg. 3]. Therefore, Tenants argue that they had no duty with respect to the alleged dangerous conditions—the substance on the floor and ladder rungs along with the water on the roof [Doc. 35, pg. 9; Doc. 42, pg. 7; Doc. 52, pg. 5]. Plaintiffs take the position that the lease provision placing control of the common areas solely on DDRTC is "outweighed by the actual practice of the parties" [Doc. 51, pg. 8]. Specifically, Plaintiffs assert that "it is patently obvious" that Tenants exercised control over the service area "on a long continuing basis" due to the practice of leaving trash, mops, and product in the service area. [Doc. 61, pgs. 14-15].[3]

However, as Plaintiffs recognize, DDRTC retained control over the area by regularly instructing Tenants to remove their items from the service area [*Id*. at pg. 14]. The right to control is distinct from the non-exclusive right to use. *See Cmty. Bank of E. Tennessee v. Tennessee Dep't of Safety*, No. E2004-00975-COA-R3CV, 2004 WL 1924018, at *3 (Tenn. Ct. App. Aug. 30, 2004)

---

[3] A lessee of a business premises does have "a duty to see that the leased premises and its approach is in a reasonably safe condition." *Gladman*, 669 S.W.2d at 679. This duty requires a lessee to "provide reasonable ingress and egress." *Id*. Although it is undisputed that Tenants placed items such as trash, mops, and product in the service area, this is not an "ingress and egress" case. Mr. Sawyer did not fall while entering or exiting any one of Tenants' premises. Mr. Sawyer also does not assert that he fell as a result of any of the aforementioned items being placed in the service area. Rather, Mr. Sawyer fell while descending from the roof on a ladder in the service area [Doc. 1, ¶ 12].

6

(quoting Black's Law Dictionary 329 (6th Ed. 1990)) ("Control" is defined as "power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee. The ability to exercise a restraining or directing influence over something."). Merely leaving trash, mops, and product in a certain area does not rise to the level of exercising control over such area. Tenants exercised their "non-exclusive right to use" the service area, and DDRTC exercised control over the service area and retained the right "[t]o operate, manage, equip, light, repair and maintain" the service area "in such manner as [it] shall in its sole discretion from time to time determine…" [Doc. 32-1, pg. 14; Doc. 36-1, pg. 9; Doc. 44-1, pg. 8].

Finally, Plaintiffs argue that Tenants violated Occupational Safety and Health Administration ("OSHA") requirements by failing to keep the ladder in a clean condition, which constitutes negligence *per se* [Doc. 51, pg. 9; Doc. 61, pg. 3]. Specifically, Plaintiffs assert that Tenants failed to comply with the OSHA standard requiring that "[l]adders shall be maintained free of oil, grease, and other slipping hazards." 29 C.F.R. §1926.1053(b)(2). Plaintiffs rely on the "special duty provision" of 29 U.S.C. § 654, which provides that employers "shall comply with occupational safety and health standards promulgated under this chapter." *See Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 803-805 (6th Cir. 1984) (holding that the "specific duty provision" protects "*all* employees, including employees of an independent contractor, who perform work at another employer's workplace."). However, the determination of whether an employer owes a duty under this provision depends on whether the employer has "control of the workplace." *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995).

The ladder which Plaintiffs contend Tenants failed to keep clean in compliance with OSHA requirements is located in the common area of the Shopping Center. As stated above, Tenants did not have control of the common area. Furthermore, as Tenants point out, Mr. Sawyer was not

7

hired as an employee or independent contractor by any of them, and there is no evidence that Tenants' employees used the ladder in the service area in the course of their employment [Doc. 63, pg. 3; Doc. 65, pg. 3-5; Doc. 66, pg. 4]. Therefore, Plaintiffs have not established negligence *per se* based on failure to comply with OSHA requirements.

Under the general principles of premises liability and the express terms of the lease, DDRTC retained control over the service area where Mr. Sawyer's injuries occurred. As a result, DDRTC, rather than Tenants, had a legal duty to "exercise reasonable care to keep the common areas in good repair and safe condition." *Tedder*, 728 S.W.2d at 347-48. Accordingly, Tenants are entitled to summary judgment as a matter of law. *See Byrd v. Hall*, 847 S.W.2d 208, 215 n.5 (Tenn. 1993) (holding that summary judgment is proper if the moving party "affirmatively negate[s] an essential element of the nonmoving party's claim, i.e. a defendant in a negligence action [is] entitled to summary judgment if he convince[s] the court that he owed no duty to the plaintiff.")

### B. Plaintiffs' Claim of Negligence against DDRTC

DDRTC asserts that it is entitled to summary judgment because it did not owe a duty and, even if it did, Plaintiffs cannot establish a breach of any duty owed [Doc. 38, pg. 5]. Additionally, DDRTC contends that Mr. Sawyer is at least fifty percent at fault for his injuries [*Id.* at pg. 10]. Plaintiffs argue that DDRTC breached its duty to remove or warn against a dangerous condition of which it had notice [Doc. 61, pg. 2]. As for comparative fault, Plaintiffs assert that such issue should be left for the jury to resolve [*Id.* at pg. 15].

#### 1. Duty

The Court has established that DDRTC, as the landlord and pursuant to the express terms of the lease, had a legal duty with respect to the common areas. It is also "well-settled that an owner generally owes an independent contractor hired to perform work on the premises a duty to

provide a reasonably safe place in which to work." *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996) (citing *Hutchison v. Teeter*, 687 S.W.2d 286, 288 (Tenn. 1985); *Broome v. Parkview*, 359 S.W.2d 566, 568 (Tenn. Ct. App. 1962)). Thus, DDRTC owed Mr. Sawyer a duty to remove or warn against dangerous conditions on the premises of which it had knowledge of or should have known about through the exercise of reasonable diligence. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)).

### i. Dangerous Condition

Before addressing the existence of a dangerous condition, the Court must address an apparent dispute as to precisely what condition is at issue. DDRTC argues that it had no duty to remove or warn against any dangerous condition because it did not and could not have known about "the grease and/or water on [Mr. Sawyer's] shoes" [Doc. 38, pg. 7]. However, Plaintiffs assert that the dangerous condition at issue is either the grease on the floor of the service area and ladder rungs or the combination of such grease and water from the roof [Doc. 53, ¶ 9]. It is undisputed that the floor in the service area was "covered with grease, or some such substance," "the grease substance was covering the floor surrounding the ladder," and Mr. Sawyer had to walk through water on the roof to access the HVAC unit [*Id.* at ¶¶ 5-7]. DDRTC also provides as an undisputed fact that a certain substance "on the ladder rungs caused [Mr. Sawyer] to slip and fall" [*Id.* at ¶ 9]. DDRTC cannot now take the position that Mr. Sawyer's shoes, rather than the substance or mixture of substances, constitute the dangerous condition.

Whether a certain condition is considered dangerous is a question of fact. *Helton v. Knox Cnty., Tenn.*, 922 S.W.2d 877, 882 (Tenn. 1996). Therefore, summary judgment is inappropriate if "reasonable minds could differ" as to the existence of a dangerous condition. *Staples v. CBL &*

9

*Assocs., Inc.*, 15 S.W.3d 83, 91 (Tenn. 2000). A condition is dangerous and triggers a duty on behalf of the defendant if it poses an unreasonable risk or, in other words, "the foreseeable probability and gravity of harm…outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153. Consequently, property owners do not have a duty to "remove or warn against conditions from which no unreasonable risk was to be anticipated…." *Rice v. Sabir*, 979 S.W.2d 305, 308-09 (Tenn. 1998).

Plaintiffs' expert, Dr. John Fellers, collected samples of the greasy substance from the service area floor and ladder on August 23, 2018, and concluded that the substance caused the surfaces to lose "their ability to grip [the soles of shoes] and the surface became slippery." [Doc. 51-4, Affidavit of John Fellers, pg. 1]. Thus, the presence of the grease substance posed a risk because it is foreseeable that it would cause a person climbing the ladder to slip and fall. Additionally, the potential consequences of falling from a ladder which reaches the roof of a shopping center are severe. Finally, the burden on DDRTC to clean the service area floor and ladder is significantly low. Considering the foregoing, a fair-minded jury could conclude that the probability and gravity of harm outweighed DDRTC's burden of cleaning the area and, therefore, the grease substance posed an unreasonable risk. On such a finding, DDRTC would have a duty to remove the grease substance or warn Mr. Sawyer about such substance so long as DDRTC knew of or should have known about the substance through the exercise of reasonable diligence.

### ii. Knowledge of the Dangerous Condition

Whether a defendant had notice of a dangerous condition or defect is a question of fact. *Pool v. State*, 987 S.W.2d 566, 568-69 (Tenn. Ct. App. 1999). Therefore, as stated previously, summary judgment is inappropriate if "reasonable minds could differ" as to whether the defendant had actual or constructive notice. *Staples*, 15 S.W.3d at 91. Actual notice of the dangerous

10

condition is defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Co.*, 892 S.W.2d 403, 409 (Tenn. 1994). A plaintiff may establish actual notice by showing that "defendant's agents or employees actually observed the condition but failed to correct it." *Arrington v. United States*, No. 04–1059 AN, 2005 WL 3533441 (W.D. Tenn. Dec. 22, 2005). If the plaintiff is unable to establish that the defendant had actual notice of a dangerous condition, the plaintiff may establish constructive notice "by showing 'a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence,' making the dangerous condition reasonably foreseeable to the premises owner." *Williams v. Linkscorp Tennessee Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (quoting *Blair*, 130 S.W.3d at 765-66).

DDRTC asserts that there is no evidence of prior slips and falls or complaints about the condition of the service area, ladder, or roof [Doc. 65, pg. 2]. In response, Plaintiffs contend that DDRTC "knew of the dangerous condition and had even discussed the necessity of cleaning it up two months before the accident occurred." [Doc. 51, pg. 10]. Dan Garrett, the property manager for DDRTC at the time of the incident, testified, that he had conversations with the Tenants on multiple occasions about the need to clean the service area [Doc. 61-9, Deposition of Dan Garrett, 25:13-23]. Jason Milanich worked at Blaze for approximately six to eight months before Mr. Sawyer's incident and his testimony indicates that DDRTC had the service area floor pressure-washed after Mr. Sawyer's incident [Doc. 61-2, Deposition of Jason Milanich, 13:4-15]. Milanich testified that the service area floor was no longer black after such cleaning [*Id*. at 13:16-25]. Brittanie Kitts, a shift leader at Blaze, testified that the black substance had been on the floor of the service area since Blaze opened [Doc. 61-3, Deposition of Brittanie Kitts, 9:9-12].

11

Based on Garrett's testimony, a fair-minded jury could conclude that DDRTC had actual notice of the grease substance because its agent or employee observed the substance and failed to clean it. As for constructive notice, the absence of any prior accidents or complaints is a factor to be considered, but the testimony of the Blaze employees as to presence of a black substance in the service area and the length of time of such presence is sufficient to raise a material question of fact as to whether DDRTC could have discovered the substance through the exercise of reasonable diligence. Viewing these facts in the light most favorable to Plaintiffs, questions of fact remain as to whether a dangerous condition existed and whether DDRTC knew of or should have known of such condition.

### 2. Comparative Fault

DDRTC asserts that Mr. Sawyer "knew that he had to ascend and descend the vertical ladder after walking through an alleged greasy floor and water" and he "failed to exercise reasonable care and caution" in doing so [Doc. 38, pg. 9]. Thus, DDRTC argues that summary judgment is appropriate because Mr. Sawyer is at least fifty percent at fault for the fall and his injuries [*Id*. at pg. 10]. Plaintiffs take the position that Mr. Sawyer had no other option but to walk through the service area and climb the ladder in order to inspect the HVAC unit and "[t]here is, at a bare minimum, a jury question as to comparative fault" [Doc. 61, pg. 15].

Under the "comparative fault doctrine, the court may compare the fault of the tortfeasor to the fault of the plaintiff." *Lewis v. State*, 73 S.W.3d 88, 94 (Tenn. Ct. App. 2001). If the plaintiff's negligence is equal to or greater than the defendant's negligence, the plaintiff may not recover. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) (adopting the "49 percent rule" of the modified comparative fault doctrine). However, "comparative fault is a question of fact within the jury's province, which should not lightly be invaded by the trial court." *LaRue v. 1817 Lake Inc.*,

12

966 S.W.2d 423, 427 (Tenn. Ct. App. 1997). Here, it is undisputed that (1) Mr. Sawyer went to the shopping center at the request of DDRTC to adjust the controls on an HVAC unit installed by one of DDRTC's tenants; (2) Mr. Sawyer had to climb the vertical ladder located in the service area to access the unit; and (3) to reach that ladder, Mr. Sawyer had to walk over the service area floor, which was "covered with grease, or some such substance." [Doc. 53, ¶ 3-5]. It is also undisputed that "[t]he ladder appeared worn and dirty" and "the grease substance was covering the floor surrounding the ladder." [*Id*. at ¶ 7]. Additionally, Mr. Sawyer admits that he was talking on the phone through his Bluetooth earbud while descending the ladder [Doc. 64-1, Deposition of Jon Sawyer, 215:19-24]. To be sure, a jury could allocate a percentage of fault to him given that he was talking on the phone while descending the ladder. But under these facts, it is not possible for the Court to conclude, at this stage, that his actions were at least fifty percent at fault in his fall to preclude any recovery as a matter of law. Therefore, summary judgment is improper.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Motions for Summary Judgment of Defendants Blaze, Marble Slab, and Jazzy [Doc. 32; Doc. 34; Doc. 41] are **GRANTED** and Defendant DDRTC's Motion for Summary Judgment [Doc. 37] is **DENIED**.

SO ORDERED:

                                            s/ Clifton L. Corker
                                            United States District Judge